**Carl E. CARNEY, Plaintiff-Respondent,**

v.

**HANSON OIL COMPANY, INC., a corporation, and Sandra L. Wood, Defendants-Appellants.**

No. 66109.

Supreme Court of Missouri,
En Banc.

May 29, 1985.

James J. Moylan, Chicago, Ill., David B. Rogers, Columbia, for appellants.

Ann K. Covington, Columbia, for respondent.

John R. Perkins, Com'r of Securities, Jefferson City, for amicus.

DONNELLY, Judge.

This appeal is from a summary judgment permitting an investor to rescind his purchase of oil and gas interests under § 409.-411, RSMo Supp.1982, because they were not registered prior to sale under § 409.-301, RSMo 1978, and because there is no exemption from registration of such interests under § 409.402(b), RSMo 1978. At issue is whether § 409.402(b), as applied, violates the Supremacy Clause, the Commerce Clause, and the Equal Protection Clause of the United States Constitution. This Court has jurisdiction pursuant to Mo. Const. art. V, § 3.

There is no dispute as to the facts of this case. From May 28, 1981, to October 9, 1981, plaintiff, a resident of Missouri, purchased on six occasions individual fractional interests in three oil wells owned by Hanson Oil Company. HOC is an Illinois corporation with its principal place of business in Louisville, Illinois, and all the oil wells are located in Illinois. All sales were made in Missouri.

Section 409.301; RSMo 1978, of the Missouri Securities Act requires that securities be registered to be offered or sold in this state unless they are exempted under § 409.402. Oil and gas interests are securities within the meaning of the Missouri Act. § 409.401($l$), RSMo 1978. Section 409.402(b) exempts certain specified transactions from the registration requirements with the following exception: "no transaction in a certificate of interest or participation, including a limited partnership interest, in an oil, gas or mining title or lease, or in payments out of production or under such a title or lease shall be so exempted." Accordingly, as HOC admits, it was required to register its securities to sell them in this state. It did not do so. On November 17, 1981, the Commissioner of Securi-

ties ordered HOC to cease and desist from the offer and sales of securities.

When the investments proved unprofitable, the investor sued for recission under § 409.411, RSMo Supp.1982. That section permits the investor "to recover the consideration paid for the security, together with interest at eight percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security" from the violator of the registration requirements. On May 4, 1984, the Circuit Court granted summary judgment for the investor and awarded him attorneys' fees. This appeal followed.

HOC first contends that § 409.-402(b) is preempted by federal law under the Supremacy Clause because securities transactions are necessarily national in scope. State statutes will be held invalid under the Supremacy Clause when they attempt to legislate in an area in which Congress intended entirely to occupy the field or when they are in actual conflict with a federal statute or statutes. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157–58, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). Congress did not intend entirely to occupy the securities area. The states, including Missouri, had securities laws, commonly referred to as "blue sky" laws, long before the Securities Act of 1933 initiated federal regulation of the sale of securities. *See generally* L. Loss & E. Cowett, Blue Sky Law (1958). The federal Securities Act both at its inception and today provides for concurrent and independent jurisdiction with the states in regulating securities:

> Nothing in this subchapter shall affect the jurisdiction of the securities commission (or any agency or office performing like functions) of any State or Territory of the United States, or the District of Columbia, over any security or any person.

15 U.S.C. § 77r (1981). Moreover, even if the federal statutes were silent as to their effect vis-a-vis those of the states, it has been held that if Congress had intended to supercede the state laws, it would have expressly so indicated. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 582 (9th Cir.1983); *Crosby v. Weil*, 382 Ill. 538, 546, 48 N.E.2d 386, 390 (1943).

Nor do we find any actual conflict between § 409.402(b) and the federal securities laws. "A conflict will be found 'when compliance with both federal and state regulations is a physical impossibility ...,' or when the state 'law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Ray v. Atlantic Richfield Co.*, 435 U.S. at 158, 98 S.Ct. at 994; *quoting Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), and *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). HOC argues that it is a physical impossibility for it to comply with section 4(2) of the federal Securities Act, 15 U.S.C. 77d(2), which exempts "private placements" from federal registration provisions, and with §§ 409.402(b) and .403 which require state registration for oil and gas interests. Even if we assume, as has not been established, that HOC's offerings would constitute "private placements" under the federal act, it is not physically impossible for HOC to comply with *state* regulation requirements while exempted from those of the *federal* government.

Moreover, compliance with state regulations as to registration is consistent with the purpose of Congress in enacting federal securities laws "to protect investors by promoting full disclosure of information thought necessary to informed investment decisions." *Securities & Exchange Commission v. Ralston Purina Co.*, 346 U.S. 119, 124, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953). Although some commentators have argued for the abolition of the more stringent regulation of securities by the states in favor of total federal preemption, *see, e.g.*, J. Mofsky, Blue Sky Restrictions on New Business Promotions 36, 37 (1971), Congress has not adopted this route, and

sound reasons for state regulations remain. *See* Tyler, More About Blue Sky, 39 Wash. and Lee L.Rev. 899 (1982).

HOC next argues that § 409.402(b) violates the Commerce Clause because it imposes a burden on interstate commerce far greater than any local interest served by the statute. The test for the constitutionality of state legislation affecting interstate commerce is that "[w]hen the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

Section 409.402(b) satisfies this test. It applies even-handedly to issuers of gas, oil and mining securities whether they are in-state or out-of-state. It promotes the goal of investor protection, *see Teefey v. Hudson,* 341 S.W.2d 377, 380 (Mo.App. 1960), which has been recognized as a legitimate local as well as national interest since the inception of the federal securities law. As with state registration requirements generally, its effects on interstate commerce are only incidental because it regulates only transactions within Missouri. *Edgar v. Mite Corp.,* 457 U.S. 624, 641, 102 S.Ct. 2629, 2640, 73 L.Ed.2d 269 (1982); *Hall v. Geiger-Jones Co.,* 242 U.S. 539, 558, 37 S.Ct. 217, 223, 61 L.Ed. 480 (1917). State blue sky laws, including registration requirements, have been consistently upheld against commerce clause challenges. *E.g., Edgar v. Mite Corp.,* 457 U.S. at 640–41, 102 S.Ct. at 2639–40; *Hall v. Geiger-Jones, supra; Caldwell v. Sioux Falls Stock Yards Co.,* 242 U.S. 559, 37 S.Ct. 224, 61 L.Ed. 493 (1917); *Merrick v. N.W. Halsey & Co.,* 242 U.S. 568, 37 S.Ct. 227, 61 L.Ed. 498 (1917).

HOC finally asserts that § 409.-402(b) violates the Equal Protection Clause of the Fourteenth Amendment by excluding oil and gas issuers from registration exemptions, thereby denying them the opportunity to raise capital granted to other issuers. The Equal Protection Clause requires states to treat uniformly all who stand in the same relation to the statute at issue. *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). It prohibits states from favoring their own residents by erecting barriers to foreign companies that wish to do interstate business. *Metropolitan Life Ins. Co. v. Ward,* —— U.S. ——, ——, 105 S.Ct. 1676, 1681, 84 L.Ed.2d 751 (1985). In making classifications, the state must proceed upon a rational basis. *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959). The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. *Royster Guano Co. v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

The particular issue before us is whether § 409.402(b) meets the rational basis test in excluding oil and gas interests from the exemptions provided therein, while retaining them in the larger class of those required to register under § 409.301. The nature of oil, gas and mining interests has been recognized to present particular possibilities for fraud or participation by unsophisticated investors. *See generally* Watson, Federal and State Regulation of Oil and Gas Interests, 28th Inst. on Oil & Gas 245 (1977). This has been true since the period between the Civil War and the enactment of the first blue sky law in Kansas in 1911, "when securities promotors and salesmen peddled mining and oil stocks of many worthless companies to unsophisticated purchasers." J. Mofsky, Blue Sky Restrictions on New Business Promotions 9–10 (1971). The Commissioner of Securities, in his *amicus curiae* brief, stated that his office has more enforcement actions concerning oil and gas interests and more criminal prosecutions of promoters of those interests than in any other single area in his jurisdiction. It is apparent that the high risk involved in oil and gas securi-

ties creates a special need for registration to inform and thereby protect the investing public. *Cf. Florida Realty, Inc. v. Kirkpatrick,* 509 S.W.2d 114, 119 (Mo.1974) (upholding deferred payment sales, but not cash sales, of land as securities against equal protection challenge). Foreign securities are treated no differently from domestic ones with respect to registration. Other states, including Oklahoma, California and Kansas, also single out oil, gas and mining interests for explicit and different exemption requirements. Okla.Stat.Ann. tit. 71, § 401(15) (West Supp.1984); Cal. Corp.Code § 25102(j) (West Supp.1984); Kan.Stat.Ann. § 17–1262(a) (Supp.1983). The classification meets the rational basis test.

The circuit court's judgment is affirmed.

All concur.