HCA HEALTH SERVICES OF MID-WEST, INC., d/b/a St. Peters Community Hospital, Appellant,

v.

ADMINISTRATIVE HEARING COMMISSION of the State of Missouri, et al., Respondents.

No. 49252.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 26, 1985.

Transfer Denied Dec. 31, 1985.

W.R. England, III, Johnny K. Richardson, Hawkins, Brydon & Swearengen, Jefferson City, for appellant.

David M. Harris, Edward M. Goldenhersh, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, Wm. L. Webster, Atty. Gen., Louren R. Wood, Jefferson City, for respondents.

GARY M. GAERTNER, Judge.

HCA Health Services of Midwest, Inc., doing business as St. Peters Community Hospital (St. Peters), appeals from the circuit court's ruling that St. Peters did not have standing to challenge a decision of the Missouri Health Facilities Review Committee (Committee). St. Peters sought to challenge the Committee's decision granting a certificate of need to the Sisters of St. Mary (St. Mary), thereby approving the expansion of St. Mary's hospital facilities in St. Charles County. We affirm the circuit court's decision.

This appeal requires an interpretation of the Missouri Certificate of Need Law, §§ 197.300–197.365 RSMo (Supp.1984).

That law, enacted in 1979 in response to the National Health Planning and Development Act, 42 U.S.C.A. § 300k *et seq.*, sets forth the procedure by which parties interested in providing hospital care in Missouri can obtain the necessary state approval.

> The essence of the certificate-of-need program is the requirement that any proposed construction of or significant capital expenditure for health facilities in a state be certified to be necessary by the State Agency before it is offered. The program is intended to reduce unnecessary duplication in health care facilities and thereby, it is hoped, reduce the cost of health care to consumers.

*Greater St. Louis Health Systems Agency v. Teasdale,* 506 F.Supp. 23, 28 (E.D.Mo. 1980).

Consistent with these principles of certificate of need law, the Missouri legislature created the Committee as an administrative agency, § 197.310 RSMo (Supp.1984), and prohibited any person from developing or offering a new institutional health service, costing in excess of certain expenditure thresholds, without first obtaining a certificate of need from the Committee. Section 197.315 RSMo (Supp.1984). Respondent, the Administrative Hearing Commission of the State of Missouri (AHC), is an administrative agency created pursuant to the Missouri Administrative Hearing Commission Act, § 621.015 RSMo (Supp.1984). Section 197.335 RSMo 1978 authorizes the AHC to hear certain appeals from Committee decisions on certificate of need applications.

Prior to the initiation of the proceedings which gave rise to this suit, both St. Peters and intervenor/respondent St. Mary operated (and continue to operate) hospitals in St. Charles County, Missouri. St. Peters' present facility is located in the City of St. Peters, and St. Mary's present facility is located in the City of St. Charles.

In May, 1983, St. Peters submitted an application to the Committee for a certificate of need to expand, renovate and equip its hospital facility in St. Peters. The application consisted of four major components: (1) the addition of obstetric and pediatric

services; (2) the construction of an additional floor to house the new obstetric and pediatric units, as well as to accommodate the expansion and relocation of medical/surgical and critical care units and ancillary and support departments; (3) the addition of 58 beds to its total licensed bed capacity; and (4) the purchase and installation of digital subtraction angiography equipment.

Also in May, 1983, St. Mary submitted to the Committee an application for a certificate of need to construct and operate a new one hundred-bed acute care hospital in the City of Lake Saint Louis, Missouri. The hospital proposed by St. Mary would include pediatric and obstetric services and would be located within fifteen miles of St. Peters' existing facility.

The Committee determined that St. Mary's application was complete on June 6, 1983, and that St. Peters' application was complete on June 7, 1983.[1] On August 25, 1983, the Committee conducted a hearing regarding the two applications. The Committee heard the testimony on St. Mary's application before hearing the testimony on St. Peters' application. After hearing testimony on both applications, the Committee voted on each.

The Committee, by oral vote, fully approved St. Mary's application, but only approved part of St. Peters' application. Of particular interest in this appeal is the denial of that portion of St. Peters' application proposing new pediatric and obstetric services and that portion requesting permission to add additional licensed beds.

On September 23, 1983, St. Peters filed a complaint before the AHC seeking review of the Committee's decisions which: (1) denied part of St. Peters' application for a certificate of need; and (2) granted St. Mary's application for a certificate of need in full. The complaint was filed before the AHC pursuant to § 197.335 RSMo (Supp.

1984), which provides, "the applicant or the health systems agency ... may file an appeal in accordance with the provisions of sections 621.015 to 621.198, RSMo, and chapter 536, RSMo...."

St. Mary then filed a motion to dismiss that portion of the complaint in which St. Peters sought review of the Committee's approval of St. Mary's application for a certificate of need. On January 9, 1984, the AHC issued an order granting St. Mary's motion to dismiss for the reason that:

(a) Petitioner [St. Peters] is neither an "applicant" nor a relevant "health systems agency," pursuant to Section 197.-335, RSMo, for purposes of the right to appeal the approval by said Committee of a certificate of need to Respondent Sisters of St. Mary, and is, therefore, without standing to pursue administrative review by appeal directly to the Administrative Hearing Commission; (b) at best, Petitioner is an "affected person" under the Certificate of Need Law with respect to the certificate of need awarded to Respondent Sisters of St. Mary, and as such, has no statutory right of appeal to the Administrative Hearing Commission in lieu of the right of judicial review; therefore, (c) the Administrative Hearing Commission lacks jurisdiction over the subject matter of Petitioner's Complaint as to the certificate of need awarded by the Missouri Health Facilities Review Committee to Respondent Sisters of St. Mary.

On February 8, 1984, St. Peters continued its effort to obtain review of the Committee's approval of St. Mary's application by filing two proceedings before the Circuit Court of St. Charles County. In the first proceeding, St. Peters sought judicial review of the AHC's decision dismissing St. Peters' appeal from the Committee's deci-

---

1. According to Committee regulations, an application is not officially filed until after it is deemed complete. 13 C.S.R. 60–3.010(3). A complete application is one which "contains sufficient information to meet the information requirements established by the committee." 13 C.S.R. 60–3.010(7). The completeness determination fixes the order in which the Committee hears applications. Therefore, although St. Peters made initial contact with the Committee before St. Mary, the Committee heard testimony on St. Mary's application first.

sion to approve St. Mary's application, pursuant to § 536.100 RSMo 1978.[2] The second proceeding was in two counts, seeking: (a) declaratory judgment pursuant to chapter 527 RSMo 1978; or, in the alternative, (b) judicial review of the Committee's decision pursuant to § 536.150 RSMo 1978.[3]

St. Mary, in its answer to the § 536.100 petition for review and in its motions to dismiss the declaratory judgment action and the § 536.150 petition for review, contended that the circuit court lacked subject matter jurisdiction over St. Peters' claims.

On August 28, 1984, the circuit court dismissed both proceedings, holding that St. Peters did not have standing to challenge the Committee's approval of St. Mary's application for a certificate of need by either: (1) an appeal to the AHC; (2) a declaratory judgment action in the circuit court; or (3) a § 536.150 petition for review in the circuit court. The circuit court also held that St. Peters had not timely filed the declaratory judgment action and the § 536.-100 petition for review.

St. Peters then appealed the circuit court's dismissals to this court. The cases have been consolidated on appeal.

This case, then, presents essentially two issues on appeal: (A) whether St. Peters could appeal to the AHC the Committee's decision to approve St. Mary's application; and (B) whether St. Peters could bring a declaratory judgment/judicial review action in the circuit court.

### (A) ST. PETERS' APPEAL TO THE AHC

In support of its argument that the circuit court erred in holding that St. Peters did not have standing to appeal the Committee's decision to the AHC, St. Peters contends: (i) that St. Peters is an "applicant" pursuant to § 197.335 RSMo (Supp. 1984); and (ii) that the doctrine of comparative review guarantees St. Peters a right to be heard at the AHC level.

Section 197.335 provides, "the applicant or the health systems agency ... may file an appeal in accordance with the provisions of sections 621.015 to 621.198, RSMo, and chapter 536, RSMo...." St. Peters contends the proper definition of "applicant" includes not only the person who has submitted the subject application for a certificate of need, but also a person who has applied to the Committee for a certificate of need to provide the same or similar services within the same or similar service area as that involved in the subject application.

■ We decline to accept St. Peters' broad interpretation of § 197.335. By its terms, this provision limits the right of appeal to applicants and health systems agencies.[4] St. Peters is neither of these. As the circuit court observed, St. Peters is, at best, an "affected person"[5] entitled to

**2.** That section provides, in pertinent part:
Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in sections 536.-100 to 536.140, unless some other provision for judicial review is provided by statute....

**3.** That section provides, in pertinent part:
When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunc-

tion, certiorari, mandamus, prohibition or other appropriate action....

**4.** Health systems agencies were created pursuant to the National Health Planning and Development Act of 1974, 42 U.S.C. § 300*l*, as voluntary health planning agencies to complement state certificate of need programs. Missouri health systems agencies were terminated by Executive Order of the Missouri governor effective in 1982.

**5.** The Certificate of Need Law defines "affected persons" to include "the person proposing the development of a new health care service, the public to be served, the health systems agency and health care facilities within the service area in which the proposed new health care service is to be developed." Section 197.305(1) RSMo (Supp.1984).

certain procedural protections under the Certificate of Need Law. *See* § 197.330 RSMo (Supp.1984). This court has expressly held, however, that § 197.335 does not grant a right of appeal to all affected persons:

> The terms of the statute before us give the right of appeal solely to the applicant and the HSA [health systems agency] for the area where the new service is to be offered. It does not grant such right to all "affected persons" which would include members of the public. It has consistently been recognized that while the public welfare is intended to be the controlling factor in administrative agency decisions, it was not intended that every citizen may participate in any case. If such participation, including rights of appeal, were allowed, it would prevent the agency from functioning efficiently.... The statutory framework of the CON [certificate of need] statute provides for an appeal by the applicant, which has a private interest, or by the area HSA, which exists to protect the public interest. We find no express authority under the statute for an appeal by plaintiff [a competing health care provider].

*St. Joseph's Hill Infirmary, Inc. v. Mandl,* 682 S.W.2d 821, 824 (Mo.App.1984). We hold, therefore, that St. Peters has no statutory right to appeal to the AHC.

St. Peters' second basis for claiming a right to AHC review is an alleged right to comparative review, which, St. Peters claims, is only available at the AHC level. St. Peters relies on the doctrine of comparative review as set forth in *Ashbacker Radio Corp. v. F.C.C.,* 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), and claims that St. Mary's and St. Peters' applications were mutually exclusive, thereby necessitating comparative review before the AHC.[6]

In *Ashbacker,* the United States Supreme Court was presented with a situation in which two applicants, each of whom had a statutory right to a hearing before the Federal Communications Commission, had come before the F.C.C. seeking approval for access to the same radio frequency. The F.C.C. granted one application and scheduled a hearing on the other application for a later date. The Court held that the hearing, however, would be to no avail because the inherent limitations of broadcast frequencies made the applications "actually exclusive." *Ashbacker,* supra at 332, 66 S.Ct. at 151. The Court asserted that because the grant of one application actually precluded the grant of the other and thus rendered the statutorily required hearing a nullity, comparative review of both applications before the F.C.C. was required. *Ashbacker,* supra at 333, 66 S.Ct. at 151. Comparative review essentially requires that the agency hear the competing applications on a consolidated basis. There were, therefore, two bases for the Court's decision in *Ashbacker:* (1) the applications were mutually exclusive; and (2) one applicant was effectively denied the statutory right to a hearing.

St. Peters contends that in the instant case the applications for certificates of need were mutually exclusive because the Committee's written decision on St. Peters' application stated that there were already sufficient facilities to meet the projected need for obstetric and pediatric services and new general acute care beds. St. Peters maintains that the reason no need existed regarding St. Peters' application was that the grant of St. Mary's application fulfilled the projected need in its entirety. According to St. Peters' argument, this proves that the applications were, in fact, mutually exclusive.

---

**6.** St. Peters claims that *Ashbacker* establishes a due process right to comparative review. The basis of the *Ashbacker* holding, however, was not due process but the denial of a statutory right to a hearing. St. Peters also claims that comparative review is not possible at the Com-

mittee level because Committee proceedings are not adversarial. Because we find that comparative review is not warranted on the facts of the instant case, we need not determine the proper level at which comparative review may be accomplished.

■ The concept of mutual exclusivity, however, is not based on the post-hearing findings of the Committee, but on the circumstances surrounding the approval or rejection of the applications at issue. As the court stated in *Eastern Air Lines, Inc. v. Civil Aeronautics Board*, 271 F.2d 752, 756–57 (2nd Cir.1959), "although a given award may adversely affect competitors' applications for other routes, this possible adverse effect of itself does not create an Ashbacker situation. Rather mutual exclusivity must be established." The mere fact that one application was approved while another was rejected, therefore, does not mean that comparative review is required.

The Missouri Certificate of Need Law vests in the Committee broad discretion with respect to hospital services. The legislature did not definitely limit the number of hospitals or beds that may be provided in a given area or for a certain population.[7] The Certificate of Need Law merely provides that, "Only those new institutional health services which are found by the committee to be needed shall be granted a certificate of need." Section 197.315.2 RSMo (Supp.1984). It is within the Committee's discretion, then, to either approve or deny any application to provide hospital service.

In *Great Western Packers Express, Inc. v. United States*, 263 F.Supp. 347 (D.Colo. 1966), the plaintiff attacked an Interstate Commerce Commission decision denying its application for leave to operate as a motor carrier over irregular routes from Colorado to California. The plaintiff sought to invoke the *Ashbacker* doctrine because the I.C.C. had approved similar applications filed concurrently by three competitor trucking lines, without holding a comparative review hearing. The District Court, in upholding the I.C.C. decision, stated:

> We do not say that the *Ashbacker* doctrine could never apply to the trucking industry. We do point out, however, that there is no limit to the number of

certificates that may be granted; nor is there the physical interference which was present in *Ashbacker.* Consequently, an applicant seeking to apply the *Ashbacker* doctrine must at least show that the granting of authority to some other applicant will substantially prejudice his application. In this instance the Commission denied the plaintiff's application on the ground that it failed to demonstrate that the public convenience and necessity required its proposed operation. Conceivably, the Commission could have granted the plaintiff's application notwithstanding that it had also granted the applications of Watkins, Curtis and Digby [plaintiff's three competitors]. Since the applications involved were not shown to have been mutually exclusive, the Commission correctly denied the plaintiff's effort to consolidate the hearings.

*Id.* at 350–51.

In the instant case, neither the Committee nor the AHC found that St. Peters' and St. Mary's applications were mutually exclusive. On the contrary, Senator Richard Webster, a Committee member, stated at the hearing that "a Certificate of Need ... could be granted to both, to neither or to one...." This statement recognized that the primary service area for the St. Mary proposal was western St. Charles County, while St. Peters' proposed expansion concerned eastern St. Charles County.

■ Accordingly, we hold that comparative review was not required in the instant case in that St. Peters' and St. Mary's applications were not mutually exclusive for *Ashbacker* purposes. The Committee made a discretionary decision to approve St. Mary's application and deny, in pertinent part, St. Peters'. This decision was not mandated either by the physical, actual exclusivity found in the *Ashbacker* case, or by a legislative limit on the number of certificates which could be granted. St. Peters, therefore, did not have a right to

---

7. Compare § 197.315.17 RSMo (Supp.1984), wherein the legislature authorized the Committee to issue only one certificate of need for an intermediate care nursing home until July 1, 1986.

comparative review at either the Committee or the AHC level.

### (B) ST. PETERS' APPEAL TO THE CIRCUIT COURT

St. Peters claims that it had standing to challenge the Committee and AHC decisions in the circuit court because article V, section 22 of the Missouri Constitution secures a right to judicial review to a person whose private rights are affected by an administrative agency's decision. That section provides:

All final decisions, findings, rules and orders of any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law. . . .

Mo. Const. art. V, § 22. This constitutional provision underlies § 536.100 and § 536.150 RSMo 1978, upon which St. Peters based its appeals to the circuit court.

In order to obtain judicial review pursuant to this constitutional provision, St. Peters must establish that the approval of St. Mary's application "operates prejudicially and directly upon . . . [St. Peters'] personal or property rights or interests and that such [is] immediate and not merely a possible remote consequence." *Hertz Corp. v. State Tax Commission*, 528 S.W.2d 952, 954 (Mo. banc 1975). Furthermore, in *St. Joseph's Hill Infirmary, Inc. v. Mandl*, *supra* at 827, this court held that "[t]he nature of the CON [certificate of need] law does not mandate a finding that it inherently requires an opportunity for appeal by a competitor." The grant of St. Mary's application, therefore, must have operated prejudicially and directly upon a legally protected right of St. Peters.

St. Peters would have us hold that it had standing to challenge the Committee's decision in the circuit court because the approval of St. Mary's application denied St. Peters' rights: (1) to obtain comparative review of the two proposals; and (2) to establish the merits of its proposal.

St. Peters' first contention is easily resolved. Because, for the reasons stated above, no right to comparative review existed in the instant case, there could have been no denial of such right. St. Peters, therefore, cannot gain standing for judicial review on this basis.

■ St. Peters' second right which it claims was denied is similarly without foundation. St. Peters was not denied the right to establish the merits of its proposal. The Committee held a full hearing on St. Peters' proposal before any decision was made regarding St. Mary's proposal. The Committee heard all testimony offered by St. Peters in support of its proposal before making any decision on either application. We cannot see, therefore, how St. Peters was denied the right to establish the merits of its proposal.

We hold, therefore, that the circuit court correctly determined that St. Peters could not gain review of the Committee's decision approving St. Mary's application at either the AHC or circuit court level.

Affirmed.

SIMON, P.J., and KELLY, J., concur.